518 So.2d 1224 (1988)
William STOKES
v.
STATE of Mississippi.
No. 57348.
Supreme Court of Mississippi.
January 20, 1988.
*1225 William E. O'Hare, Smith & O'Hare, Cleveland, Thomas J. Lowe, Jr., Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ZUCCARO, JJ.
HAWKINS, Presiding Justice, for the Court:
William (Willie) Stokes has appealed from his conviction in the circuit court of Coahoma County of murder and sentence to life imprisonment. The issues on his appeal are the sufficiency of the evidence, and also whether admission of pliers into evidence as a possible murder weapon was reversible error. We affirm.

FACTS
Two sisters, Ethel and Jeanette Strong, and their cousin Roy Cooper, were picked up by the defendant, William Stokes, at a liquor store in Clarksdale on the night of October 24, 1984. "Willie," as he was called by his companions, drove them to Jonestown where they stopped at another liquor store. Sometime after 10:00 p.m. (no one wore a watch), the group left Jonestown for Clarksdale by way of Old Russell Road, known to some as Eagle's Nest, and to others as Jonestown Road.
The night was warm and foggy with poor visibility. Jeanette was seated in the back seat with Roy Cooper. Willie and Ethel sat on the front seat. All had been drinking. Roy and Ethel said that the members of the group were not drunk, but they were high after smoking marijuana. They stopped the car to fix a flat, failed to do so, and could not start the car. They pushed it to the side of the road.
After sitting in the car for a while, Jeanette said that she was going to walk home, and asked Ethel and then Roy to walk with her, but each declined. Jeanette started out alone. Shortly after, Willie started walking so that Jeanette would not be walking alone. When he left he was wearing a hat.
Willie was gone from the car some thirty to forty minutes as guessed by Roy and Ethel, and returned alone, without his hat. According to Roy and Ethel, when he got back he told them that "somebody done got Jenny." (R. 139, 170-171) Willie denied having told them this. Also, Roy and Ethel said that Willie was wet to the waist when he returned to the car, and was trembling or shivering. Willie denied being wet.
Willie got the car started, and with a flat tire the party was going along the road looking for Jeanette. They reached the intersection of Highway 6, and not having seen Jeanette, they turned around and stared back north along the road. When they got to a point on the road, Willie stopped. Ethel testified she spotted what appeared to be a brown paper bag half submerged in the roadside ditch. Willie also saw the object, and said he thought it was a brown paper bag.
The ditch was about 60 feet off the hard surface, was about 10 feet wide, and was filled approximately waist deep with water. Willie waded into the ditch to the object, and found Jeanette's body, which he lifted out of the water. Roy helped him place the body into the car. Jeanette had no clothes on except her blouse and jacket; her slacks, panties, shoes and one footie were missing. Either Willie's or Jeanette's jacket was used to cover her body.
*1226 Willie turned the car around and they started towards Clarksdale when the wheel with the flat came off the car. Willie and Ethel left the car to find assistance, and secured Cleve Prater and his two stepsons at the fourth house they tried. Mr. Prater and his stepsons took the three of them and Jeanette's body to the hospital. Jeanette was pronounced dead on arrival.
An autopsy performed by Dr. Thad Rodda, the local pathologist, revealed the following external injuries: laceration extending deep through the tissue to the skull bone, about one-half inch deep; laceration under the right eye extending to the bone structure; several bruises on the forehead, linear in shape; and bruises on the front of the neck. An internal examination revealed blood in the spinal fluid in the area of the brain, and watery fluid in congested lungs. The blood in the spinal fluid indicated a blow to the head sufficient to render her unconscious and therefore unable to remove herself from the water. He assigned the cause of death as drowning.
No broken bones were found, and there was no evidence of rape or attempted rape. No injuries to the genitalia were found. It was Dr. Rodda's opinion that any number of weapons could have caused the cut on the back of Jeanette's head. The location, curve and margins of the cut, however, made it unlikely in his opinion that the head wound was caused by hitting her head on the pavement.
Deputy Sheriff Isaac Lee was summoned to the hospital. In ascertaining that Willie and Roy had no weapons on them, Lee said Willie gave him a pair of pliers. Lee then took them back to look for the place where the body was found. Willie and Roy were unable to locate where the body was found, but they did reach Willie's car, where Lee asked Willie to open the trunk. Willie opened the trunk with a screwdriver; it had no latch. Lee said the screwdriver was obtained by Willie from inside the car. Anthony Scott, one of the stepsons, however, said that he furnished the screwdriver.
Willie denied having given Lee the pliers as Lee testified. He said that the pliers were inside his car, and that he first attempted to open the trunk with the pliers, and being unsuccessful, he borrowed the screwdriver from Prater.
After searching the trunk of the car, Willie and Roy were taken to the county jail.
On October 27 the ditch was dredged for the remainder of Jeanette's clothing. The slacks were wrong side out with the panties in the slacks. "Beggar's lice" were noted on the slacks.
Willie's clothes were taken by the officers, and "beggar's lice" were found on his shorts, but not on his trousers.
At trial Roy and Ethel testified that no car passed them on the road at any time after the car stopped. Willie at first told the officers no cars passed them, but later changed his story to state that two cars had passed along the road.
Ethel also testified that Willie told her and Roy that night to tell the police that they took Jeanette down to their cousin's house. Willie denied this, also.
Michael Derrick Lee, an inmate in the jail along with Willie, testified at trial that Willie had told him that he wished he could have that night to do all over again, and said that he "did it but it was an accident." Willie denied having told Michael this. Eddie Saffold, another inmate, testified that Michael asked him to lie about Willie, and to say that Willie had confessed to the killing. He also said there were bad feelings between Michael and Lee.
The jury found Willie guilty of murder, and he was sentenced to life imprisonment.

LAW
Stokes first challenges the sufficiency of the evidence to warrant his conviction.
Because this case is largely circumstantial, we have detailed the evidence placed before the jury. The jury was required to believe Stokes guilty beyond all reasonable doubt and to the exclusion of every reasonable hypothesis other than that of guilt. Our careful review of this record persuades us that a jury issue was made on Stokes' guilt. We are cautious in *1227 a circumstantial evidence case. Ratliff v. State, 515 So.2d 877 (Miss. 1987); Algheri v. State, 25 Miss. 584 (1853). Yet our standard of review in a conviction based upon circumstantial evidence must be distinguished from the burden of proof evaluated by the jury. Our standard is that a circumstantial evidence conviction will not be disturbed unless it is opposed "by a decided preponderance of the evidence." Kitchens v. State, 300 So.2d 922 (Miss. 1974); Johnson v. State, 23 So.2d 499, 500 (Miss. 1945). See also Ratliff v. State, supra; McFee v. State, 511 So.2d 130, 134 (Miss. 1987); Fisher v. State, 481 So.2d 203, 213-14 (Miss. 1985); Toncrey v. State, 465 So.2d 1070, 1072 (Miss. 1985); Blanks v. State, 451 So.2d 775, 779 (Miss. 1984); Winters v. State, 449 So.2d 766, 771 (Miss. 1984).
Stokes' remaining assignment of error is that the circuit court erred in admitting the pliers into evidence. He claims first that the pliers were in his car, not on his person, and second, that there was no proof that the pliers were the weapon which struck Jeanette. As noted from the facts, Deputy Lee testified he obtained the pliers from Stokes at the hospital. Also, while there was no proof that the pliers were used to inflict the injury to Jeanette, it was proper for the State to introduce them, because there was competent evidence to show that a blow by the pliers could have caused the type of injury the pathologist observed on Jeanette's head. Ethridge v. State, 418 So.2d 798, 800 (Miss. 1982).
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.