734 So.2d 295 (1999)
Durville Antonio HAMMONDS and Andra Fleming a/k/a Andre Flemming, Appellants,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01096 COA.
Court of Appeals of Mississippi.
February 9, 1999.
*296 William F. Travis, Southaven, Jack Jones, Attorneys for Appellants.
Office of the Attorney General by Dewitt Allred III, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.
BRIDGES, C.J., for the Court:
¶ 1. Durville Antonio Hammonds and Andre Fleming were convicted in the De-Soto County Circuit Court of conspiracy to commit burglary (Count I), burglary of a dwelling (Count II) and grand larceny (Count III). Each was sentenced to five years suspended for Count I, fifteen years with nine years suspended, a fine of $500 and $100 to the Mississippi Crime Victims' Fund for Count II, and five years suspended for Count III. The sentences imposed in Count I and Count III are to run consecutively to the sentence imposed in Count II. Hammonds and Fleming appealed their conviction based on several assignments of error. Finding the assignments of error meritless, we affirm.

FACTS
¶ 2. On December 13, 1996, at about 9:00 or 9:30 a.m. Brian Williams glanced out the front window of his house on Walnut Grove Street in Horn Lake and noticed an unfamiliar yellow Chevette pull into the driveway of a house across the street. In the car were four persons, a black female, two black males, and a white male. As Williams watched, the woman, later identified as Nishiki Nelson, got out of the car, went to the front door of the house, knocked repeatedly on the door, and then returned to the car.
*297 ¶ 3. The yellow Chevette backed out of that driveway and pulled into the driveway at 6370 Walnut Grove Street where Scott and Carolyn McQueen resided. Nelson again got out of the car, went into the carport, and knocked repeatedly on the door. The larger of the two black males, Durville Antonio Hammonds, got out of the car and stood beside Nelson at the door. The driver, Robert Eugene Garcia, backed the vehicle out of the driveway out to the street, turned the car around and then backed it into the driveway under the carport. Williams called 911.
¶ 4. Garcia and the other black male, Andre Fleming, got out of the car and joined Nelson and Hammonds. Hammonds, who was wearing shorts, kicked the door open and all four persons entered the residence. Williams watched from his window as Fleming, Hammonds, Nelson, and Garcia carried personal property from the house and quickly loaded the items into the yellow Chevette.
¶ 5. The first officer to respond to the 911 call made by Williams, Horn Lake Police Officer Donald Dodge found the four persons seated in the loaded car preparing to leave. Officer Dodge identified Hammonds and Fleming as two of the four people in the car. The locked door to the house had been kicked in, and the residence had been ransacked. An inventory of the items found in the car was confirmed by Scott McQueen to be the items taken from the house.
¶ 6. Detective David Barton interviewed the suspects on the scene. Hammonds and Fleming stated that Garcia had told them the house belonged to his aunt and he needed their help to move his belongings out of her house. McQueen testified Garcia is no relation to the McQueens.
¶ 7. Andre Fleming, Robert Eugene Garcia, Durville Antonio Hammonds, and Nishiki Nelson were indicted for (1) conspiracy to commit burglary in violation of Miss.Code Ann. § 97-1-1(a) (Rev.1994), (2) burglary of a dwelling house in violation of Miss.Code Ann. § 97-17-23 (Supp.1998), and (3) grand larceny in violation of Miss. Code Ann. § 97-17-41 (Supp.1998). The trial court denied motions from Fleming and Hammonds for the severance of their causes, and they were tried jointly in the DeSoto County Circuit Court. Both were found guilty on each count and the trial court sentenced each to a term of fifteen years in the custody of the Mississippi Department of Corrections, with nine years suspended, a $500 fine and $100 to the Mississippi Crime Victims' Fund for the burglary, a consecutive term of five years, suspended, for the conspiracy and a consecutive term of five years, suspended, for the grand larceny.
¶ 8. Subsequently, Hammonds and Fleming moved for a JNOV or, alternatively, for a new trial. The trial court denied both motions.
¶ 9. Hammonds perfected this appeal assigning the denial of the motion for severance as error. Fleming appeals assigning as error (1) the trial court's denial of his request for a severance, (2) the trial court's denial of his motion for a mistrial, and (3) the trial court's denial of the motion for new trial. Finding these assignments of error to be without merit, we affirm.

ARGUMENT AND DISCUSSION OF LAW

I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTIONS FOR SEVERANCE
¶ 10. Hammonds and Fleming assert the trial court abused its discretion in denying the motions for severance because the co-defendants presented antagonistic defenses. The State argues that neither co-defendant attempted to exculpate himself at the expense of the other; the balance of the evidence did not tilt more toward the guilt of one than toward the guilt of the other; and there was no conflict in the defenses relied upon by the co-defendants.
*298 ¶ 11. Moving for severance prior to trial, Hammonds argued that if Fleming testified Fleming would try to incriminate Hammonds by testifying that Hammonds kicked in the door making the co-defendants "diametrical[ly] against one another in the possible defense theories in this matter." The trial judge agreed with the State that such testimony by Fleming would not rise to the level of requiring a severance. Other testimony would show Hammonds and Fleming were caught at the scene by the police officers with the merchandise in the car; they were all in the car leaving; and all four of them were entering the house and loading stuff in the car. The trial judge denied Hammond's motion.
¶ 12. After the presentation of the State's case-in-chief, Hammond renewed his motion to sever. Fleming joined in the motion. The trial court again denied the motion to sever.
¶ 13. The trial judge has the discretion to grant a severance if it is necessary to promote a fair determination of the defendant's guilt or innocence. In Duckworth v. State, 477 So.2d 935, 937 (Miss. 1985), the Mississippi Supreme Court stated there are a number of criteria to be used to determine if the denial of a motion for severance is proper. These criteria are whether or not the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant and whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. Absent a showing of prejudice, there are no grounds to hold the trial court abused its discretion. Id. at 937.
¶ 14. Neither Hammonds nor Fleming has shown he was prejudiced by being tried jointly. Although the appellants argue they presented antagonistic defenses which tended to exculpate one co-defendant at the expense of the other, the record shows Hammonds and Fleming presented the same defense: Garcia told them they were removing Garcia's belongings from Garcia's aunt's house. However, each presented inconsistent testimony of his co-defendant's participation:
Fleming testified that Hammonds kicked in the door at the McQueens' residence to gain entry. Hammonds testified the door was unlocked.
Hammonds testified all four persons, including Fleming, entered the house and took the items. Fleming testified he never left the car.
¶ 15. We agree with the State that these discrepancies are insignificant in light of other evidence presented to the jury. The balance of the evidence in this case was sufficient to indicate Hammonds and Fleming conspired to commit the burglary, entered the dwelling, and removed the personal property of the McQueens. Although Fleming testified that Hammonds kicked the door in to gain entry, his testimony only bolstered that of the eyewitness to the event. Fleming's testimony that he remained in the car was contrary to the eyewitness account that all four persons entered the McQueen residence and carried personal property to the car. The first police officer to arrive at the scene found Hammonds and Fleming in the loaded Chevette preparing to leave. Therefore, the balance of the evidence introduced implicated equally Fleming and Hammonds in the crimes of which they were indicted. Accordingly, the trial court did not abuse its discretion in denying the motions for a severance. Gossett v. State, 660 So.2d 1285, 1290 (Miss.1995). See also Rigby v. State, 485 So.2d 1060, 1061 (Miss. 1986) (quoting Blanks v. State, 451 So.2d 775 (Miss.1984) "[W]e found no error in a circuit judge's refusal to grant a severance `where all the evidence at the trial went to the guilt of both appellants and not to one more than the other.'").
¶ 16. This assignment of error is without merit.

II. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO DECLARE *299 A MISTRIAL WHEN HAMMONDS INADVERTENTLY TOLD THE JURY FLEMING HAD PARTICIPATED IN THE RID PROGRAM
¶ 17. During the direct examination of Hammonds, Hammonds was instructed to tell the jury what happened on December 13, 1996. Hammonds replied, "Robert Garcia was at my house that night of the 12th. I met him through Andre Fleming.... I met him through Andre. They was [sic] at the RID Program together."
¶ 18. Fleming's attorney asked to approach the bench and requested the trial court declare a mistrial stating Hammonds' referral to the RID Program inferred prior criminal activity by Fleming. The State argued the jurors were probably unfamiliar with the RID Program. After a conference at the bench, the trial judge overruled Fleming's motion for mistrial, but stated that he would instruct the jury to disregard the remark. However, Fleming asked the trial judge not to so instruct the jury.
¶ 19. "Whether to declare a mistrial is committed to the sound discretion of the trial court." Johnson v. State, 666 So.2d 784, 794 (Miss.1995) (citing Brent v. State, 632 So.2d 936, 941 (Miss.1994)). "The failure of the court to grant a motion for mistrial will not be overturned on appeal unless the trial court abused its discretion." Johnson, 666 So.2d at 794 (citing Bass v. State, 597 So.2d 182, 191 (Miss. 1992)). "[T]rial judges are peculiarly situated so as to decide (better and more logically than anyone else) when a trial should be discontinued." Bass, 597 So.2d at 191 (quoting Schwarzauer v. State, 339 So.2d 980, 982 (Miss.1976)). The Mississippi Supreme Court has stated:
Elementary to all trial proceedings is the proposition that the occurrence of any prejudicially incompetent matter or misconduct before a jury, the damaging effect of which cannot be removed by admonition or instructions, necessitates a mistrial. However, it is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the followed the directions of the trial judge.
Walker v. State, 671 So.2d 581, 621 (Miss. 1995) (citations omitted).
¶ 20. In the case sub judice, the inadvertent comment that Garcia and Fleming met in the RID Program was made in response to a request by Hammonds' attorney to tell about the events occurring on the day of the burglary of the McQueen residence. The trial judge denied Fleming's motion for a mistrial after taking into consideration the jury probably was unfamiliar with the program so would not infer from Hammonds' statement that Fleming had been convicted of a prior crime. Further, Hammond referred to the Regimented Intern Discipline Program by its acronym only.
¶ 21. Moreover, Fleming had the opportunity to cure any possible prejudicial effect the remark had on the jury by having the judge admonish the jury to disregard the statement. Refusing the trial judge's offer to so instruct the jury, Fleming cannot now complain about the prejudicial effect of the comment. Before resuming the direct examination of Hammonds, the trial judge instructed Hammonds to refrain from mentioning anything about Fleming's past criminal record.
¶ 22. The trial judge did not abuse his discretion in overruling Fleming's motion for mistrial. This assignment of error is without merit.

III. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL
¶ 23. As his third point of error, Fleming contends the trial court erred in denying his motion for new trial in that Hammonds admitted to Fleming that *300 Hammonds testified falsely about Fleming's participation in the burglary of the dwelling. Thus, Fleming argues, in light of the perjured testimony the trial judge abused his discretion and a new trial should be granted.
¶ 24. The trial court's denial of a motion for new trial will be reversed by this Court only if the court abused its discretion. Morgan v. State, 703 So.2d 832, 840 (Miss.1997). U.R.C.C.C. 10.05 provides:
The court on written notice of the defendant may grant a new trial on any of the following grounds:
. . .
(3) Where new and material evidence is recently discovered which would probably produce a different result at a new trial, and such evidence could not have been discovered sooner, by diligence of counsel....
¶ 25. After considering Fleming's testimony at the post-trial hearing, the trial judge denied the motion for a new trial:
THE COURT: [I]f I believed everything Mr. Fleming said, if I believed all of that was true, to set it aside and give a new trial I'd have to decide that it had some influence or some effect on the jury. And I believe that it did not because of the other completely unassociated, unrelated eyewitnesses that testified that all four people in that car went into that house. I do not think it had that kind of effect on the jury even if I believed everything that Mr. Fleming said. I will deny the motions.
¶ 26. Disregarding Hammonds' allegedly false testimony, there was sufficient evidence to support a jury finding that Fleming was guilty of conspiracy, burglary and grand larceny. As the trial judge noted, Hammonds was not the only person at trial who testified that Fleming entered the dwelling. Williams, the eyewitness to the crime, testified Hammonds and Fleming, along with two others, were hurriedly removing the items from the McQueens' residence and placing the items in the car. Based upon the testimony of Officer Dodge, Hammonds, Fleming, Nelson, and Garcia were in the car preparing to leave the scene when he arrived. The vehicle was packed to capacity with the McQueens' personal property necessitating the passengers to hold items. Scott McQueen testified that none of the four had permission to remove anything from the dwelling. McQueen further testified the aggregate and total value of the items recovered from the Chevette exceeded $250.
¶ 27. We are convinced that the trial court did not abuse its discretion in denying the motion for new trial. This issue is without merit.
¶ 28. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF ANDRE FLEMING OF COUNT I, CONSPIRACY AND SENTENCE OF FIVE YEARS SUSPENDED; COUNT II, BURGLARY OF A DWELLING AND SENTENCE OF FIFTEEN YEARS, WITH NINE YEARS SUSPENDED, A FINE OF $500 AND $100 TO THE MISSISSIPPI CRIME VICTIMS' FUND; COUNT III, GRAND LARCENY AND SENTENCE OF FIVE YEARS SUSPENDED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCES IN COUNT I AND COUNT III TO RUN CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT II. ALL COSTS OF APPEAL ARE ASSESSED TO DESOTO COUNTY.
¶ 29. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF DURVILLE ANTONIO HAMMONDS OF COUNT I, CONSPIRACY AND SENTENCE OF FIVE YEARS SUSPENDED; COUNT II, BURGLARY OF A DWELLING AND SENTENCE OF FIFTEEN YEARS, WITH NINE YEARS SUSPENDED, A FINE OF $500 AND $100 TO THE MISSISSIPPI CRIME VICTIMS' FUND; *301 COUNT III, GRAND LARCENY AND SENTENCE OF FIVE YEARS SUSPENDED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCES IN COUNT I AND COUNT III TO RUN CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT II. ALL COSTS OF APPEAL ARE ASSESSED TO DESOTO COUNTY.
McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, KING, LEE, PAYNE, AND SOUTHWICK, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.